## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

LIRJON MECO, Individually and on Behalf of
All Others Similarly Situated,

                    Plaintiff,

    v.

GATESTONE & CO. INTERNATIONAL, INC.,

                    Defendant.

Case No.: 20-cv-326

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

### INTRODUCTION

1.    This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

### JURISDICTION AND VENUE

2.    The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

### PARTIES

3.    Plaintiff Lirjon Meco is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.    Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5.     Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6.     Defendant Gatestone & Co. International, Inc. ("Gatestone") is a foreign business corporation with its primary offices located at 455 North 3rd Street, Suite 260, Phoenix, Arizona 85004.

7.     Gatestone does substantial business in Wisconsin and has designated its registered agent in Wisconsin for the service of process as C T Corporation System, 301 South Bedford Street, Suite 1, Madison, Wisconsin 53703.

8.     Gatestone is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.     Gatestone is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10.     Gatestone is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11.     On or around February 4, 2020, Gatestone mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "BMO Harris Bank, N.A."  A copy of this letter is attached to this complaint as Exhibit A.

12.     Upon information and belief, the alleged debt identified in Exhibit A was incurred by use of a credit card, which was used only for personal, family or household purposes.

13.     Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

2

14.     Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

15.     Exhibit A includes a "SETTLEMENT OFFER," subject to the following terms:

> Gatestone & Co. International Inc. is prepared to present you with an opportunity to settle your account. We are ready to settle your account for only $4,577.23. Upon receipt and clearance of the settlement amount, your account will be settled and no further collection activities will take place.
>
> To take advantage of this offer, you must contact us at (866) 653-6252 to finalize this settlement. The payment must be received in our office within ten days from the date of this letter. This offer may be revoked at anytime.

16.     Exhibit A thus provides the consumer with inherently false and contradictory information. The letter at once states that the deadline for accepting the purported settlement offer is "ten days from the date of this letter," while simultaneously stating: "[t]his offer may be revoked at any time."

17.     The representation: "[t]his offer may be revoked at any time" is false, deceptive, misleading, confusing, and unfair to the unsophisticated consumer.

18.     Upon information and belief, Gatestone and/or the original creditor would have settled Plaintiff's alleged debt for $4,577.23, or less, at any time.

19.     The unsophisticated consumer, not knowing when the settlement offer expired, may feel intimidated into prioritizing the debt ahead of more urgent debts. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

20.     Alternatively, the unsophisticated consumer may be concerned that, even if they tendered $4,577.23 to Gatestone within 10 days of receiving Exhibit A, that Gatestone would declare the purported settlement offer to have been revoked, apply the funds to total balance, and continue to seek the remaining balance from the consumer.

3

21.     In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L*, 505 F.3d 769, 775-76 (7th Cir. 2007).

22.     The purpose of the settlement language prescribed by the Seventh Circuit is to signal to the unsophisticated consumer that "renewal is a possibility but that it is not assured."

23.     Exhibit A contains a "settlement date certain;" the letter clearly states that the deadline is "ten days from the date of this letter."

24.     Not only does Exhibit A fail to include the *Evory* safe-harbor language, but the letter expressly threatens to revoke the purported settlement "at any time."

25.     Upon information and belief, Defendant did not intend to revoke its settlement offer within the next ten days.

26.     Upon information and belief, Defendant did not intend to revoke its offer at all.

27.     The threat to revoke its settlement offer is a material misrepresentation because "is potentially deceiving as to the most basic element of the parties' relationship—the terms of payment for the debt, namely the time in which to pay." *Al v. Van Ru Credit Corp.*, No. 17-cv-1738-JPS, 2019 U.S. Dist. LEXIS 6321, at *8-9 (E.D. Wis. Jan. 14, 2019); *see also Evory*, 505

F.3d at 775-76; *Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, \*13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

28.     Plaintiff was misled and confused by <u>Exhibit A</u>.

29.     The unsophisticated consumer would be misled and confused by <u>Exhibit A</u>.

### *The FDCPA*

30.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at \*12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at \*3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at \*6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at \*8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to

5

standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes ... do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

31.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

32.     Misrepresentations of the character, amount, or legal status of any debt and misrepresentations as to the proper party to pay, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs*., 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016)

(holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

33.    15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

34.    15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

35.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

36.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

### *The WCA*

37.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

38.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

39.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

8

40.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

41.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stat. § 427.104.

42.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stat. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

43.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

44.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

45. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

46. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

47. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

48. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

49. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

50. By stating: "This offer may be revoked at any time," Exhibit A falsely threatens to take action which Gatestone did not intend to take and includes representations which are false, deceptive, and misleading.

51. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5),1692e(10), and 1692f.

10

## COUNT II – WCA

52.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53.     By stating: "This offer may be revoked at any time," Exhibit A falsely threatens to take action which Gatestone did not intend to take and could be reasonably expected to threaten Plaintiff.

54.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(L).

## CLASS ALLEGATIONS

55.     Plaintiff brings this action on behalf of a Class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between February 28, 2019, and February 28, 2020, inclusive, (e) that was not returned by the postal service.

56.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

57.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

58.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

59.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

11

60.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

<strong><u>JURY DEMAND</u></strong>

61.     Plaintiff hereby demands a trial by jury.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     injunctive relief;

(d)     attorneys' fees, litigation expenses and costs of suit; and

(e)     such other or further relief as the Court deems proper.

Dated:  February 28, 2020

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com